IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JESSIE TERRELL RADFORD,                                                                    PLAINTIFF
ADC #655432

v.                                          4:21CV00905-JM-JTK

DEXTER PAYNE, et al.                                                                      DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge James M. Moody Jr. Any party may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

I.  **Introduction**

Jessie Terrell Radford ("Plaintiff") is in custody in the Arkansas Division of Correction ("ADC"); this lawsuit arises from incidents that took place while Plaintiff was incarcerated at the Varner Supermax Unit. Plaintiff sued ADC Director Dexter Payne, Varner Supermax Wardens James Shipman and Clark, Major Carroll, Classification Committee Member Washington, and Disciplinary Hearing Officer Keith Waddle in their personal and official capacities. (Doc. No. 9). Plaintiff's claims against Defendants Payne, Clark, Waddle, and Shipman have been dismissed. (Doc. Nos. 11, 15). Plaintiff's claims against Defendants Carroll and Washington remain pending.

Defendants Carroll and Washington (collectively, "Defendants") now have filed a Motion for Partial Summary Judgment on the issue of exhaustion, Brief in Support, and Statement of Facts. (Doc. Nos. 42-44). Plaintiff has responded. (Doc. No. 50).

After careful consideration of the record before me, and for the reasons explained below, I recommend Defendants' Motion be granted.

## II. Plaintiff's Claims

In his Amended Complaint, Plaintiff alleges that after he served his disciplinary sentence, his name still appeared on the barracks roster as if he remained in punitive. (Doc. No. 2 at 4). As a result, Plaintiff was not allowed to use the phone. (Id.) Plaintiff claimed Defendant Carroll denied him telephone privileges. (Id.) He further claimed Defendant Washington, despite being aware of the civil rights violation, failed to take corrective action. (Id.)

## III. Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat

a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

## IV. Analysis

Defendants argue that Plaintiff failed to exhaust his claims against them. (Doc. No. 43).

According to the Prison Litigation Reform Act ("PLRA"),

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001). In addition, the United States Court of Appeals for the Eighth Circuit held in Chelette v. Harris, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229

3

F.3d 684, 688 (8th Cir. 2000) (quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000)). In Johnson v. Jones, the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original). Finally, in Jones v. Bock, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. 199, 218 (2007).

At the time of the incidents giving rise to this lawsuit, the ADC had in place a grievance procedure, Administrative Directive ("AD") 19-34. (Doc. No. 42-1 at ¶ 4; Doc. No. 42-2). Pursuant to the Directive, an inmate is required to attempt informal resolution of a problem or complaint prior to filing a formal grievance. (Doc. No. 42-2 at 1-2.) This is accomplished by completing and submitting the Unit Level Grievance Form within fifteen days after the occurrence of the incident. (Id. at 6.) The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (Id.) Following an attempt at informal resolution, an inmate may proceed by filing a formal grievance on the same Unit Level Grievance Form. (Id. at 9.) The warden or his designee must provide a written response within twenty working days of receipt. (Id. at 11.) If dissatisfied with the response, the inmate may appeal within five working days to the appropriate Chief Deputy/Deputy/Assistant Director. (Id. at 12.) The Chief Deputy/Deputy/Assistant Director must provide a written response within thirty working days. (Doc. No. 42-2 at 13.) "A [written] decision or rejection of an appeal at this level is the end of the grievance process." (Id.) Administrative Directive 19-34 includes the following

4

warning:

> A Grievance must specifically name each individual involved in order that a proper investigation and response may be completed. An inmate must fully exhaust the grievance procedure as a prerequisite to pursuing any legal action related to the subject matter of the grievance. All inmates are hereby advised that the Division reserves the right to raise any and all defenses, including the failure to exhaust the grievance procedure, as to any claim which may have been subject to the grievance procedure and as to any person or entity.
>
> An inmate who fails to name all parties during the grievance process may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties.

(*Id*. at 5.)

In support of their Motion, Defendants present the Declaration of Terri Grigsby Brown, the ADC's Inmate Grievance Supervisor. (Doc. No. 42-1 at ¶ 2). According to Ms. Brown, she reviewed Plaintiff's grievance records for the period of April 5, 2021 through October 5, 2021, the date on which Plaintiff filed this case. (Id. at ¶ 33). According to Ms. Brown, Plaintiff failed to exhaust any grievance related to the claims in this case. (Id. at ¶ ¶34-46).

Ms. Brown acknowledged that Plaintiff filed VSM21-00857, dated April 26, 2021, that complained that Defendant Carroll was hindering Plaintiff from buying stamped envelopes while on restriction. (Doc. No. 42-1 at ¶ 35; Doc. No. 42-3). Ms. Brown further acknowledged that this grievance was properly exhausted. (Doc. No. 42-1 at ¶ 37). Grievance VSM21-00857, however, is not related to Plaintiff's pending claims in this case. Ms. Brown found that Plaintiff filed no grievance against Defendant Washington during the relevant period of time. (Id. at ¶ 38).

Ms. Brown addressed the two grievances that Plaintiff attached to his Amended Complaint. (Doc. No. 42-2 at ¶¶ 39-45; Doc. No. 9 at 6, 7). She points out that the grievances appear to be Step One, Informal Resolutions. (Doc. No. 42-1 at ¶ 42). Ms. Brown maintains that Plaintiff did not proceed to Step Two, Formal Grievance. (Id. at ¶¶ 42-44). As such, Plaintiff failed to

<201>warning:

> A Grievance must specifically name each individual involved in order that a proper investigation and response may be completed. An inmate must fully exhaust the grievance procedure as a prerequisite to pursuing any legal action related to the subject matter of the grievance. All inmates are hereby advised that the Division reserves the right to raise any and all defenses, including the failure to exhaust the grievance procedure, as to any claim which may have been subject to the grievance procedure and as to any person or entity.
>
> An inmate who fails to name all parties during the grievance process may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties.

(*Id*. at 5.)

In support of their Motion, Defendants present the Declaration of Terri Grigsby Brown, the ADC's Inmate Grievance Supervisor. (Doc. No. 42-1 at ¶ 2). According to Ms. Brown, she reviewed Plaintiff's grievance records for the period of April 5, 2021 through October 5, 2021, the date on which Plaintiff filed this case. (Id. at ¶ 33). According to Ms. Brown, Plaintiff failed to exhaust any grievance related to the claims in this case. (Id. at ¶ ¶34-46).

Ms. Brown acknowledged that Plaintiff filed VSM21-00857, dated April 26, 2021, that complained that Defendant Carroll was hindering Plaintiff from buying stamped envelopes while on restriction. (Doc. No. 42-1 at ¶ 35; Doc. No. 42-3). Ms. Brown further acknowledged that this grievance was properly exhausted. (Doc. No. 42-1 at ¶ 37). Grievance VSM21-00857, however, is not related to Plaintiff's pending claims in this case. Ms. Brown found that Plaintiff filed no grievance against Defendant Washington during the relevant period of time. (Id. at ¶ 38).

Ms. Brown addressed the two grievances that Plaintiff attached to his Amended Complaint. (Doc. No. 42-2 at ¶¶ 39-45; Doc. No. 9 at 6, 7). She points out that the grievances appear to be Step One, Informal Resolutions. (Doc. No. 42-1 at ¶ 42). Ms. Brown maintains that Plaintiff did not proceed to Step Two, Formal Grievance. (Id. at ¶¶ 42-44). As such, Plaintiff failed to

exhaust either grievance. (Id. at ¶ 45). Ms. Brown also points out that, even if Plaintiff had proceeded in the grievance process with these two grievances, the grievances would not have been exhausted before Plaintiff filed this suit: the grievances are dated September 11, 2021, Plaintiff filed this suit only seventeen working days later, and the ADC's grievance procedure takes up to seventy-six working days to complete. (Id. at 46). Plaintiff does not dispute that the grievance procedure takes up to seventy-six working days. (Doc. No. 44 at ¶ 32; Doc. No. 50 at 3).

In his Response, Plaintiff maintains that

> the Defendants were [coerced] when the Judge state to the Defendants to make Summary Judgment on the issue of exhaustion, then the Attorney General Attorney look to find any issues of exhaustion but couldn't find any. He or she was the removed from the case . . . [due] to the fact Attorney General Attorney Counsel for defendant didn't wat to lie . . . and . . . was then to leave his employment with the Attorney General Office.

(Doc. No. 50 at 1). The Court notes that it regularly enters scheduling orders setting the date for a motion for summary judgment on the issue of exhaustion, and regularly grants an attorney's motion to withdraw when he or she is leaving their current employment, with the Attorney Generals' Office or otherwise. This is standard court operating procedure, and no coercion is involved.

Plaintiff disputes that AD 19-24 requires an inmate "to fully comply with all other provisions of the ADC grievance policy in order to fully exhaust administrative remedies as required by the [PLRA]." (Doc. No. 44 at ¶ 13; Doc. No. 50 at 2). Plaintiff maintains "they take the grievance and hold them and don't answer then send them back months later back dated then say its without merit and/or untimely." (Doc. No. 50 at 2). Plaintiff has not explained how this this applies to the grievances he attached to his Amended Complaint, both of which Plaintiff filed in with a date in September 2021.

6

Plaintiff also contests that a grievance officer transmits an acknowledgement or rejection of the until level grievance form to the inmate within 5 days after receipt. (Doc. No. 44 at ¶ 22; Doc. No. 50 at 3). Plaintiff says "the date on the grievance may have a date that state the respond in the twenty days but they wait/or I wouldn't get the copy respond until months later and if it's a grievance where it's a chance of a lawsuit they will not return the grievance at all . . . ." (Doc. No. 50 at 3).

Again, Plaintiff has not explained how this applies to the grievances he attached to his Amended Complaint.

Plaintiff also disputes that

> [t]he ADC grievance policy explicitly informs the inmates that they must exhaust their administrative remedies as to all defendants at all levels of the grievance process before final a Section 1983 lawsuit or their lawsuit or claims may be dismissed immediately pursuant to the exhaustion requirements of the Prison Litigation Reform Act.

(Doc. No. 44 at ¶ 33; Doc. No. 50 at 3).

In his Response, Plaintiff maintains he exhausted his administrative remedies. (Doc. No. 50 at 3). He attached to his response a grievance appeal decision. (Id. at 4). Plaintiff complained in the grievance that in January 2022 he was being held in his isolation cell after his isolation days were complete. (Id.) But in the grievances attached to his Amended Complaint, Plaintiff said that in September 2021 he had been off of punitive for months, but his name was still appearing on the roster as if he was still on punitive. (Doc. No. 9 at 6, 7). It appears Grievance VSM22-00226 addresses a different issue than the claims raised in this lawsuit. Further, Plaintiff filed this lawsuit in 2021; a grievance complaining of acts in 2022 could not have been exhausted before this case was filed.

Plaintiff also attached Grievance VSM21-00857 to his Response. (Doc. No. 50 at 8-11). Again, as mentioned above, that Grievance is not related to Plaintiff's pending claims in this case.

Plaintiff asserts it is a lie that he filed no grievance against Defendant Washington during the relevant time period. (Doc. No. 44 at ¶ 44; Doc. No. 50 at 3). And he disputes that he filed only one grievance naming Defendant Carroll. (Doc. No. 44 at ¶ 42; Doc. No. 50 at 3). But Plaintiff has not come forward with any evidence beyond his statement to support his position.

In his Amended Complaint, Plaintiff provided that he filed a grievance about the facts set out in his pleading. (Doc. No. 9 at 3). Plaintiff then explained:

> I have Affidavits, as I did my best to get a grievance signed the officer would get them and . . . never give them back. I went far as they allowed me to go with the grievances   The officers and yard staff here hinder the grievance steps and process. Be lucky to get a respond back and if some one do respond the answer wouldn't be to address the violation written in the grievance complaint but with a unfair respond.

(Id.)

Plaintiff attached two Step One grievances to his Amended Complaint; one is dated September 11, 2021 and the second is dated September 22, 2021. (Id. at 6, 7). Plaintiff also attached one Affidavit to his Amended Complaint. (Id. at 8). It reads:

> I have made several attempts to resolve this matter at hand with the Arkansas Department of Correction to correct there due process violation where when requesting to the officer that assigned to the post c/8 #1-6 bring me the phone to my cell.  I sometime get denied with the statement when they look at the barracks roster.  Its got me down as punitive by my name Jessie Radford #655432 that influence the officers decision to not allow me the equal opportunity to call home on phone days.  I have not got any write up or disciplinary in over 3 months or more but the computer is showing on barracks roster the excessive punitive days. Violate my due process of procedural and substantial of laws civil rights of the 8th 13th 14th amendment of the constitution and ADC policy these excessive months of punitive days is a big due process violation—take liberty the last write up was approximately 4-10-2021 & 4-14-2021.  I complete the punitive days.  Today is 9-11-2021 and they have not removed me off punitive. This is defamation of character.

(Id.)  Plaintiff's Affidavit does not mention any problem with the grievance process.

Under Administrative Directive AD 19-34, Plaintiff was required to proceed with the grievance process even if he had not received a response at any level.  (Doc. No. 42-2 at 8, 11). Plaintiff has not provided any evidence that he did so.  For example, Plaintiff has not provided a copy of a Step Two grievance submitted, even though no response was received.  Further, the grievances Plaintiff attached to his Amended Complaint were dated September 11, 2021 and September 22, 2021.  (Doc. No. 9 at 6, 7).  Plaintiff filed suit already on October 5, 2021.

Plaintiff did not meet proof with proof to establish facts in dispute that would preclude summary judgment in Defendants' favor.  Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor).  The Court concludes that the short period of time between when Plaintiff grieved at Step One and when he filed suit, considered together with the lack of other evidence substantiating Plaintiff's position, supports the finding that Plaintiff failed to exhaust his administrative remedies against Defendants Carroll and Washington.

Accordingly, the Court will recommend Defendants' Motion be granted and Plaintiff's claims dismissed without prejudice.  Because only Plaintiff's claims against Defendants Carroll and Washington remain pending, the Court will also recommend Plaintiff's Amended Complaint be dismissed without prejudice.

**V.     Conclusion**

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment on the issue of exhaustion (Doc. No. 42)

be GRANTED.

2.Plaintiff's claims against Defendants Carroll and Washington be DISMISSED without prejudice for failure to exhaust.

3.Defendants Carroll and Washington be DISMISSED as parties from this lawsuit.

4.Plaintiff's Complaint, as amended (Doc. No. 9) be DISMISSED without prejudice.

Dated this 8th day of April, 2022.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE